IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BENNETT RIMMER**                                        **PLAINTIFF**

**v.**                                   **CAUSE NO. 1:23CV198-LG-RPM**

**HANCOCK COUNTY, MISSISSIPPI;**
**KODIE KOENNEN, in his individual**
**capacity and official capacity as**
**Hancock County Supervisor; TRENT**
**FAVRE, in his individual capacity**
**and official capacity as Hancock**
**County Youth Court Judge; and**
**JOHN DOE BUSINESS 1-5**                           **DEFENDANTS**


**ORDER GRANTING IN PART AND DENYING IN PART [47] MOTION FOR
JUDGMENT ON THE PLEADINGS AND [49] MOTION FOR JUDGMENT
ON THE PLEADINGS**


**BEFORE THE COURT** are the [47] Motion for Judgment on the Pleadings

filed by Kodie Koennen (individual capacity) and [49] Motion for Judgment on the

Pleadings by Judge Trent Favre (individual capacity).  After reviewing the

submissions of the parties, the record in this matter, and the applicable law, the

Court finds the [47] [49] Motions for Judgment on the Pleadings are granted in

part.  Plaintiff's supplemental state law claims for  intentional infliction of

emotional distress and malicious interference with employment or business

relationships are dismissed.  All additional requested relief is denied.

- 1 -

# BACKGROUND

According to the Amended Complaint, Hancock County hired Rimmer as a public defender in the Youth Court beginning around January of 2022.[1]  The County hired him after Judge Favre appointed him to the Youth Court.  The parties do not dispute that the County paid Rimmer's salary.  In 2023, Koennen—a Hancock County Supervisor—entered the political race to be Chancery Clerk of Hancock County.  Rimmer alleges that Defendants became aware that Rimmer was supporting a different candidate for Chancery Clerk.  Rimmer alleges that Defendants learned that Rimmer was looking into the educational background of Koennen during the week of April 17, 2023.  Rimmer alleges that because Rimmer supported another candidate, Koennen contacted Judge Favre and demanded that Rimmer be terminated.  Rimmer alleges that Judge Favre knew, or should have known, the unlawful basis of Rimmer's termination.  On April 19, 2023, Judge Favre removed Rimmer from his position as public defender in the Hancock County Youth Court.  Subsequently, Rimmer alleges the County voted to remove and terminate him as an employee of the County with knowledge of the retaliatory nature of the termination.

---

[1] The Court notes that the parties dispute whether Rimmer was a public defender or a Youth Court Family representative.  [*See* 29 ¶4; 47-1; 48 p. 2].  Regardless, the subsequent analysis of Part II *infra* would be the same regardless of Mr. Rimmer's position.  The appointment of youth court personnel, including public defenders or family representatives, falls under the complete discretion of the Youth Court Judge.  *See* Miss. Code Ann. § 43-21-119; Miss. Code Ann. § 43-21-123.

Rimmer, by and through counsel, filed this lawsuit on July 10, 2023, in the Circuit Court of Hancock County, Mississippi. Defendants removed this action on August 11, 2023, pursuant to 28 U.S.C. § 1331. On December 28, 2023, Rimmer filed an Amended Complaint. Rimmer asserts the following claims: deprivation of Constitutional rights by Hancock County under 42 U.S.C. § 1983; deprivation of Constitutional rights by Judge Favre under 42 U.S.C. § 1983; deprivation of Constitutional rights by Koennen under 42 U.S.C. § 1983; intentional infliction of emotional distress by Koennen and Judge Favre; and malicious interference with employment or business relationships by Koennen. On April 22, 2024, Kodie Koennen filed a Motion for Judgment on the Pleadings, and Judge Favre filed a Motion for Judgment on the Pleadings. Both parties have fully briefed the issues.

## DISCUSSION

### A. STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to that of Rule 12(b)(6) motions. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022) (citation omitted). The "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff'" when considering a Rule 12(b)(6) motion to dismiss. *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). The court will not dismiss a "claim unless the plaintiff would not be entitled to relief under any set of facts or

any possible theory that he could prove consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324 (citation omitted). To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A court does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axesss Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (citation omitted).

42 U.S.C. § 1983 provides a cause of action against a person who, acting under color of state law, violates an individual's rights secured by the Constitution or federal law. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (citation omitted); 42 U.S.C. § 1983. Rimmer's § 1983 claim is premised upon the First Amendment. It is well settled that "with a few exceptions, the Constitution

- 4 -

prohibits a government employer from discharging or demoting an employee

because the employee supports a particular political candidate." *Heffernan v. City*

*of Paterson*, 578 U.S. 266, 270 (2016) (citations omitted).

> To prevail on a § 1983 First Amendment retaliation claim, a
> public employee must establish the following: (1) [he] suffered an
> adverse employment action; (2) [his] speech involved a matter of public
> concern; (3) [his] interest in commenting on matters of public concern
> outweighs the employer's interest in promoting efficiency; and (4) [his]
> speech motivated the employer's adverse action.

*Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006) (citation omitted).  "If the

plaintiff carries this burden, then the defendant must show, by a preponderance of

the evidence, that it would have taken the same action against the plaintiff even in

the absence of the protected conduct." *Lukan v. N. Forest ISD*, 183 F.3d 342, 346

(5th Cir. 1999) (citations omitted).

## B.  [47] MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY KODIE KOENNEN (INDIVIDUAL CAPACITY)

Koennen argues that the First Amendment claim filed against him

individually fails because Judge Favre acted in his judicial capacity and Koennen is

entitled to quasi-judicial immunity.  In the alternative, Koennen claims he is

entitled to qualified immunity.  Koennen also argues that the intentional infliction

of emotional distress claim fails because the activity falls within an ordinary

employment dispute and is not outrageous.  Koennen argues that the tortious

interference claim fails because Koennen is not a "stranger" to Rimmer's

employment.  Therefore, Koennen argues that these state law claims should be dismissed.

## 1. **Quasi-Judicial Immunity**

Koennen argues that because Judge Favre has judicial immunity, Koennen is entitled to quasi-judicial immunity.  Courts apply a functional approach to determine "whether particular actions of government officials fit within a common law tradition of absolute immunity, or only the more general standard of qualified immunity . . . , which looks to the nature of the function performed, not the identity of the actor who performed it."  *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996) (internal quotations omitted) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).  "[A]n official acting within the scope of his authority is absolutely immune from a suit for damages *to the extent that the cause of action arises from his compliance with a facially valid judicial order*[.]"  *Id.* at 113 (emphasis added).  This is known as quasi-judicial immunity.  "[A]n official *acting outside the scope of his authority* does not enjoy absolute immunity for his actions."  *Id.* at 114 (emphasis added) (citation omitted).

The issue is what activity Rimmer alleges Koennen did to create liability. Koennen contends that he was merely following the execution of the judge's valid order that Rimmer be terminated.  He argues that carrying out a valid judicial order entitles him to quasi-judicial immunity.  *Id.*; *see Mays*, 97 F.3d at 113. Koennen argues that the "only assertion made against Koennen as an individual in

- 6 -

Rimmer's First Amendment Retaliation claim is that he participated in the vote to spread Judge Favre's Order upon the minutes of the Board of Supervisors in order to remove Rimmer from the County's payroll."  Additionally, Koennen isolates the language in Count I of the Amended Complaint to indicate that Rimmer did not specifically allege individual wrongdoing that falls outside quasi-judicial immunity.

The alleged action Rimmer claims does not arise from Koennen's mere execution of Judge Favre's order.  *See Jones*, 188 F.3d at 324.  Rimmer's factual allegations include specific acts Koennen committed outside the scope of Judge Favre's order: Koennen allegedly contacted and demanded Judge Favre fire Rimmer.  Koennen allegedly made these demands because he learned that Rimmer supported another chancery clerk candidate.  Koennen did not make these demands to Judge Favre following a judicial order; in fact, the alleged act occurred before the judicial order.  Koennen alleged actions do not "clothe[] the official with the absolute judicial immunity enjoyed by the judge issuing the order."  *See Mays*, 97 F.3d at 108.  Therefore, quasi-judicial immunity is inapplicable to the claim that Koennen demanded Judge Favre to terminate Rimmer's appointment.

## 2.  Qualified Immunity

Koennen argues in the alternative that he is entitled to qualified immunity and is not liable for Rimmer's employment termination.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The two-prong analysis of qualified immunity is (1) whether there is sufficient evidence showing a violation of a constitutional right, and (2) "whether the right was clearly established." *Id.* at 232 (citation omitted). Either prong may resolve the issue of qualified immunity, and "the Court has discretion to decide which of the two prongs should be addressed first." *Smith v. City of Madison*, 364 F. Supp. 3d 656, 661 (S.D. Miss. 2018) (citing *Pearson*, 555 U.S. at 236).

A public official who is a nonfinal decisionmaker can be individually liable for § 1983 First Amendment retaliation claims. *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018) (per curiam). Liability for government officials under § 1983 "turns on traditional tort principles of 'but-for' causation." *Id.* at 639 (citations omitted). Known as "cat's paw" liability, the nonfinal decisionmaker may "be liable for having unlawful motives that caused the firing." *Id.* at 641. Cat's paw liability in § 1983 cases depends on "whether the particular act was a 'causal link' in the termination." *Id.* (citations omitted). Courts since *Sims* require a plaintiff to "identify an individual action taken by . . . the Board Defendant[] which would support individual § 1983 liability." *James v. Cleveland Sch. Dist.*, No. 4:19-CV-66-DMB-RP, 2021 WL 3277239, at *13 (N.D. Miss. Jul. 30, 2021); *see Williams v. Canton Pub. Sch. Dist.*, No. 3:19-CV-927-DPJ-FKB, 2020 WL 2477671, at *2 (S.D.

Miss. May 13, 2020); *Jones v. Hosemann*, 812 Fed. App'x 235, 238–39 (5th Cir. 2020).

Rimmer alleges that Koennen contacted "Judge Favre (Rimmer's direct supervisor) and demand[ed] that Rimmer be terminated because Rimmer supported another candidate for chancery clerk."  Rimmer alleges that within twenty-four hours of Defendants becoming "aware that Rimmer was looking into the educational background claims of Koennen[,]" Judge Favre terminated him.  Contacting Judge Favre and demanding Rimmer's termination is an identifiable individual action that would support § 1983 liability and a "causal link" to the termination.  *See James*, 2021 WL 3277239 at *13; *Sims*, 894 F.3d at 641.  Assuming the facts as true, but for Koennen "demanding Rimmer be terminated because Rimmer supported another candidate[,]" Judge Favre would not have fired Rimmer.  These alleged actions taken by Koennen therefore caused Rimmer's termination and reach *Sims*' requirement of "but for" causation.  *See Sims*, 894 F.3d at 641.  Therefore, the Court may infer that Koennen is liable for violating Rimmer's First Amendment rights.  *See Iqbal*, 556 U.S. at 678.  Because *Sims* clearly established the right for First Amendment retaliation claims against nonfinal decisionmakers and there are factual allegation that tend to show Koennen retaliated against Rimmer in violation of his First Amendment rights, both prongs overcome qualified immunity.  *See Pearson*, 555 U.S. at 232.  Koennen is not entitled to quasi-judicial immunity or qualified immunity.

- 9 -

### 3.  Intentional Infliction of Emotional Distress

A court has supplemental jurisdiction over claims that arise out of the same case or controversy when the court has original jurisdiction over a different claim. 28 U.S.C. § 1367(a).  This claim arises out of the same controversy as the § 1983 claim because Rimmer alleges that Koennen induced Judge Favre to fire Rimmer, so this Court has supplemental jurisdiction.  Because intentional infliction of emotional distress arises under state law, the Court uses Mississippi substantive law.  *See Songcharoen v. Plastic & Hand Surgery Assoc., P.L.L.C.*, 561 Fed. App'x 327, 332 (5th Cir. 2014).

Koennen argues that because this case is about an employment dispute, there is no outrageous conduct rising to the level of an intentional infliction of emotional distress claim.  "[D]amages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes."  *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004) (citation omitted).  "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress."  *Id.*  "[T]he conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss.

1996)). "Viable claims for intentional infliction of emotional distress in a workplace

environment usually are 'limited to cases involving a pattern of deliberate, repeated

harassment over a period of time.'" *Collins v. City of Newton*, 240 So. 3d 1211, 1220

(Miss. 2018) (quoting *Pegues*, 913 F. Supp. at 982–83). Here, Rimmer alleges that

Koennen demanded Judge Favre terminate Rimmer because he supported a

different candidate. This conduct does not rise to the level of extreme and

outrageous required for an intentional infliction of emotional distress claim. *See*

*Collins*, 240 So. 3d at 1221 (finding an "alleged wrongful termination does not rise

to the level of more than any employment dispute that may have its roots in

personal animosity" and "such behavior [may be] unbecoming of a public official,

[but] it certainly does not rise to the level of outrageousness or revulsion such that

it is intolerable in a civilized society"); *Raiola*, 872 So. 2d at 85. Therefore, this

claim is dismissed.

## 4. Malicious Interference with Employment/Business Relationships

"An action for tortious interference with [a] contract ordinarily lies when a

party maliciously interferes with a valid and enforceable contract[.]" *Levens v.*

*Campbell*, 733 So. 2d 753, 760 (Miss. 1999). State law claims for tortious

interference with at-will employment contracts are viable. *Id.* The elements of

tortious interference with a contract are:

> 1) the acts were intentional and willful; 2) that they were calculated to
> cause damages to the plaintiffs in their lawful business; 3) that they
> were done with the unlawful purpose of causing damage and loss,

without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred.

*Id.* at 760–61 (citation omitted). "[T]he wrongdoer [must be] a 'stranger' to the contract which was interfered with—an outsider." *Cenac v. Murry*, 609 So. 2d 1257, 1269 (Miss. 1992) (citations omitted).

Here, the Hancock County Board of Supervisors paid Rimmer, pursuant to state law. *See* Miss. Code Ann. § 43-21-119; Miss. Code Ann. § 43-21-123. Koennen is a member of the Board of Supervisors for Hancock County. Because Rimmer is an alleged employee for Hancock County, and Koennen is part of the County entity that pays him, Koennen is familiar with Rimmer's employment contract. Therefore, Koennen is not a "stranger" or an outsider to Rimmer's contract. The state law claim for tortious interference with a contract against Koennen is dismissed.

## C. [49] MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY TRENT FAVRE (INDIVIDUAL CAPACITY)

Judge Favre argues that Rimmer's First Amendment claim against him individually fails because he is entitled to judicial immunity for judicial acts. He further argues that a mere employment dispute is not outrageous conduct, so the intentional infliction of emotional dispute claim fails. Therefore, Judge Favre argues, these claims against him individually should be dismissed.

### 1. Judicial Immunity

At issue is whether the appointment and termination of youth court personnel through court order is a normal judicial function in Mississippi.

Generally, judges have judicial immunity, which is absolute immunity from suit.
*Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam).  Immunity applies regardless of
"allegations of bad faith or malice[.]"  *Id.*  (citations omitted).  "[T]he immunity is
overcome in only two sets of circumstances[:]"  nonjudicial actions and judicial
actions "taken in the complete absence of all jurisdiction."  *Id.* at 11–12 (citations
omitted).  "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of
the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the
expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial
capacity."  *Stump v. Sparkman*, 435 U.S. 340, 362 (1978).  There is a "distinction
between judicial acts and the administrative, legislative, or executive functions that
judges may on occasion be assigned by law to perform."  *Forrester v. White*, 484 U.S.
219, 227 (1988).  "Although administrative decisions 'may be essential to the very
functioning of the courts,' such decisions have not been regarded as judicial acts."[2]
*Davis v. Tarrant County*, 565 F.3d 214, 222 (5th Cir. 2009) (quoting *Forrester*, 484

---

[2] The *Davis* court lists instructive scenarios where a judge acts administratively,
including: *Ex parte Virginia*, 100 U.S. 339, 348 (1880) (A judge preparing an annual
eligibility list for persons who may serve on grand juries is not a judicial act.);
*Morrison v. Lipscomb*, 877 F.2d 463, 465–66 (6th Cir. 1989) (Judge declaring a
moratorium on issuing writs of restitution is an administrative act because it does
not connect to a particular case and merely instructs court personnel on processing
petitions to the court.); *Goodwin v. Circuit Court*, 729 F.2d 541, 549 (8th Cir. 1984)
(A judge deciding to transfer a hearing officer is an "administrative personnel
decision."); *Lewis v. Blackburn*, 555 F. Supp. 713, 723 (W.D.N.C. 1983) (holding that
appointing magistrates is ministerial) *rev'd on other grounds*, 759 F.2d 1171 (4th
Cir. 1985); *see also Richardson v. Koshiba*, 693 F.2d 911, 914 (9th Cir. 1982) (The
judicial selection panel screening decisions involved judges performing "executive"
acts.).  *Davis*, 565 F.3d at 222 n.3.

U.S. at 229). "Hiring and firing of employees is typically an administrative task" because it does not involve judicial discretion; "in other words, the judge [does] not utilize his education, training, and experience in the law to decide whether or not to retain" the employee. *McMillan v. Svetanoff*, 793 F.2d 149, 155 (7th Cir. 1986).

The Fifth Circuit uses a four-factor test to determine whether an act is judicial in nature:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Davis*, 565 F.3d at 222 (citation omitted). "These factors are broadly construed in favor of immunity." *Id.* at 223 (citation omitted). Whether terminating an appointment of a county employee is a judicial function is the main factor at issue in this motion.

Judge Favre relies on *Davis* to support his argument that he is immune from suit because, he argues, his appointment of Rimmer was a judicial function. In *Davis*, the Fifth Circuit looked to Texas state law to determine whether a judge's denial of appointment constituted a judicial function. The plaintiff sued the county district judges because they "denied his application to be included on the list of attorneys eligible for court appointment[.]" *Id.* at 216. Texas law regarding court appointment of counsel in criminal cases has a detailed procedural regime in order to standardize countywide procedures. *Id.* at 218. Texas law limits the judge's

discretion and enforces a rotating list of attorneys. *Id.* These procedures "ensure that appointments are allocated . . . in a manner that is fair, neutral, and nondiscriminatory; and that the judges specify the objective qualifications necessary for an attorney to be included on the public appointment list." *Id.* at 218. The defendant county's plan "imposes mandatory general qualifications for attorneys seeking appointments[,]" including "objective criteria" and a "subjective review." *Id.* at 219. The *Davis* court ultimately held that the "the act of selecting applicants for inclusion on a rotating list of attorneys eligible for court appointments is inextricably linked to and cannot be separated from the act of appointing counsel in a particular case, which is a clearly judicial act[.]" *Id.* at 226.

The facts of this case are distinguishable from *Davis*. While Judge Favre appointed Rimmer as Youth Court personnel, Hancock County hired and paid Rimmer because of the appointment. Mississippi law, unlike Texas law, provides no known procedures regarding limiting a Youth Court Judge's discretion with appointing Youth Court personnel and hiring policies. *Compare id.* at 218–19, *with* Miss. Code Ann. § 43-21-201(3) (listing minimum requirements of the attorney's education), Miss. Code Ann. § 43-21-119, *and* Miss. Code Ann. § 43-21-123. *See also Donaldson v. Cotton*, 336 So. 3d 1099, 1106–07 (Miss. 2022) (A youth court judge could order a prosecutor to prepare orders because "of her inherent power as a youth court judge." The youth court judge "exercise[s] her *inherent discretionary powers as a judge* to make the youth court operate efficiently[.]" (emphasis added)).

- 15 -

As Judge Favre had total discretion over whether to terminate Rimmer, this case appears to concern more of an employment decision by the judge rather than appointment as in *Davis*.

Therefore, this case is more aptly analogous to the facts seen in *Forrester v. White*.  484 U.S. 219.  In *Forrester*, the state judge demoted and discharged a subordinate court employee, a probation officer.  The judge had authority under state law to hire probation officers "who were removable in his discretion."  *Id.* at 221 (citation omitted).  The judge hired the plaintiff and then appointed her as a "Project Supervisor."  The judge later demoted her to a nonsupervisory position and eventually discharged her.  The Seventh Circuit held that the plaintiff's adjudicatory functions were "inextricably tied to discretionary decisions that have consistently been considered judicial acts."  *Id.* at 222 (quoting *Forrester v. White*, 792 F.2d 647, 652 (7th Cir. 1986), *rev'd*, 484 U.S. 219).  The Supreme Court reversed, finding

> it clear that Judge White was acting in an administrative capacity when he demoted and discharged Forrester.  Those acts—like many others involved in supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system.  The decisions at issue, however, were not themselves judicial or adjudicative. . . . [A] judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys[.]

*Id.* at 229.  The Court did not "think it significant that, under Illinois law, only a judge can hire or fire probation officers.  To conclude that, because a judge acts

- 16 -

within the scope of his authority, such employment decisions are . . . converted into 'judicial acts' would lift form above substance." *Id.* at 230.

Similar to *Forrester*, this case presents a judge dismissing and discharging court personnel. *See id.* at 221–22. While Rimmer is allegedly a Hancock County employee, Judge Favre still had complete discretionary authority regarding Rimmer's employment, and Judge Favre's act to rescind Rimmer's appointment is effectively an "employment decision." *See id.* at 230; [29 ¶4]. Judge Favre attempts to distinguish *Forrester* because a probation officer is a non-judicial employee, whereas Rimmer is an appointed attorney. *Forrester*'s analogies to other hiring and firing situations (such as a "district attorney who hires and fires assistant district attorneys") presents a much closer relation than a probation officer and judge; it reveals that the Court's holding turns on whether the judge has the sole discretion over employment policies and does not distinguish where personnel is judicial or non-judicial. 484 U.S. at 222.

Judge Favre attempts to distinguish *Forrester*'s holding by citing *Dunn v. Kennedy*, No. 07-50548, 2008 WL 162855 (5th Cir. Jan. 17, 2008) (per curiam). In *Dunn*, the Fifth Circuit found that under Texas law, the judge's act to remove a lawyer from a court appointment list is a judicial act. 2008 WL 162855 at *1. The court distinguished *Forrester* because Dunn was not an employee of the court.

> The payment of a *private attorney* to represent criminal defendants by court appointment is not tantamount to employment by the judicial system. Second, in this case, the judicial function at issue is the

appointment of *outside counsel* to represent clients before the court, *not the hiring or firing of court personnel*.

*Id.* at \*2 (emphasis added) (citing *Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006)).  Again, the alleged facts in this case distinguish themselves from *Dunn*. Unlike *Dunn*'s private attorney who was not employed by the judicial system, Rimmer was a public employee paid by Hancock County specifically because Judge Favre appointed him as Youth Court personnel.  Today's case is about "*the hiring or firing of court personnel*."  *See* 2008 WL 162855 at \*2 (emphasis added) (citation omitted).

## 2.  Intentional Infliction of Emotional Distress

Judge Favre argues that there is no outrageous conduct because this case is about a mere employment dispute, and so, the intentional infliction of emotional distress claim fails.  For the same reasons stated *supra* in Part II.B.3, this claim is dismissed.

## CONCLUSION

As noted above, **t**he standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to that of Rule 12(b)(6) motions.  The court's review is limited to the Amended Complaint.  Therefore, at this stage of the proceedings the Court must accept all well-pleaded facts in the Amended Complaint as true, viewing them in the light most favorable to the plaintiff.  However, the Court expresses no opinion on the merits of any claims made in the Amended Complaint.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [47] and [49] Motions for Judgment on the Pleadings are **GRANTED in part** and **DENIED in part**.  Plaintiff's supplemental state law claims for intentional infliction of emotional distress and malicious interference with employment or business relationship are **DISMISSED**.  All further requested for relief is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 20th day of November, 2024.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.

UNITED STATES DISTRICT JUDGE